COURTNEY C. HILL  (SBN:  210143)
SHANNON L. ERNSTER  (SBN:  264940)
GORDON & REES LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone:  (213) 576-5000
Facsimile:  (213) 680-4470

Attorneys for Defendant
CONSUMER REPORTS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC,<br><br>                              Plaintiff,<br><br>        vs.<br><br>CONSUMER REPORTS, INC., and DOES 1-10,<br><br>                              Defendant. | CASE NO.  2:18-cv-00876<br>Judge:<br><br>**DECLARATION OF SHANNON L. ERNSTER IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C.  § 1332**<br><br>**[DIVERSITY, 28 U.S.C. § 1332]**<br><br>State Court Complaint Filed: December 27, 2017<br><br>Accompanying Papers:<br>Defendant's Notice of Removal Under 28 U.S.C. § 1332 (Diversity); Declaration of Michael Martin in Support of Defendant's Notice of Removal<br><br>Courtroom: |

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-1-
DECLARATION OF SHANNON L. ERNSTER IN SUPPORT OF
DEFENDANT'S NOTICE OF REMOVAL

## DECLARATION OF SHANNON L. ERNSTER

I, Shannon L. Ernster, declare as follows:

1.      I am an attorney duly licensed to practice law before all courts of the State of California and the United States District Court for the Central District of California, and am a senior counsel at Gordon & Rees LLP, attorney for Defendant Consumer Reports, Inc. ("Defendant").  I am a member in good standing with the State Bar of California.  I have personal knowledge of the following facts, except for those based on information and belief, which I believe to be true, and if called upon to testify, I could and would competently testify to their truth and accuracy.

2.      This declaration is submitted in support of Defendant's Notice of Removal.

3.      Plaintiff Healthcare Ally Management of California, LLC ("Plaintiff") filed its initial Complaint in this matter on December 27, 2017.  A true and correct copy of Plaintiff's Summons and Complaint is attached hereto as **Exhibit A**.

4.      Plaintiff served Defendant with the Summons and Complaint via its agent for service of process, Corporate Creations, on January 3, 2018.  A true and correct copy of the Service of Process Notice is attached hereto as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and if called as a witness I could and would so testify.

Executed this 2nd day of February, 2018 in Los Angeles, California.

/s/ *Shannon L. Ernster*
Shannon L. Ernster

**Gordon & Rees LLP**
**633 West Fifth Street, 52nd Floor**
**Los Angeles, CA 90071**

DECLARATION OF SHANNON L. ERNSTER IN SUPPORT OF
DEFENDANT'S NOTICE OF REMOVAL

1120708/28688245v.1

# EXHIBIT A

12/26/2017    10:48 PM PST    TO:15627530579    FROM:3234886748    Page:    14

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CONSUMER REPORTS, INC. and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 27 2017

Sherri R. Carter, Executive Officer/Clerk
By: Stacey Watson, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Santa Monica Courthouse<br>1725 Main St.<br>Santa Monica, CA 90401 | **CASE NUMBER:**<br>*(Número del Caso):*<br>SC128605 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan Stieglitz, 11845 W. Olympic Blvd., Suite 800, Los Angeles, California 90064, (323) 979-2063

| DATE: 27 December 2017    Sherri R. Carter, Clerk<br>*(Fecha)* | Clerk, by<br>*(Secretaria)* | **STACEY WATSON** | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Consumer Reports, Inc
   under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

23:02:21 2017-12-26

Opt-Out: Not Defined

| | |
|---|---|
| 1 | Jonathan A. Stieglitz, Esq. (SBN 278028)<br>THE LAW OFFICES OF JONATHAN A. STIEGLITZ<br>11845 Olympic Blvd., Suite 800<br>Los Angeles, CA 90064<br>Telephone:  (323) 979-2063<br>Facsimile:  (323) 488-6748 | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>DEC 27 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Stacey Watson, Deputy |

1   Jonathan A. Stieglitz, Esq. (SBN 278028)
    THE LAW OFFICES OF JONATHAN A. STIEGLITZ
2   11845 Olympic Blvd., Suite 800
    Los Angeles, CA 90064
3   Telephone:  (323) 979-2063
    Facsimile:  (323) 488-6748
4
    Attorney for Plaintiff
5   Healthcare Ally Management of California, LLC

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF LOS ANGELES

10

11  HEALTHCARE ALLY MANAGEMENT         Case No.  SC128605
    OF CALIFORNIA, LLC
12                                     Complaint For:
               Plaintiff,             1.  *QUANTUM MERUIT*;
13                                     2.  BREACH OF ORAL CONTRACT; and
          v.                           3.  PROMISSORY ESTOPPEL
14
    CONSUMER REPORTS, INC., and DOES
15  1-10                               (Jury Trial Requested)

16             Defendant.

17

18

19       Plaintiff HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC (hereinafter

20  referred to as "HAMOC") complains and alleges:

21                               **STANDING**

22       1.    On June 17, 2015, La Peer Surgery Center (hereinafter referred to as the "Medical

23  Provider") assigned all rights, including the right to file suit, relating to the unpaid bills of

24  Patient,[1] a member and enrollee of CONSUMER REPORTS, INC. (hereinafter referred to as

25  "DEFENDANT"), to HAMOC.

26

27  _____
    [1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability
28  Act ("HIPAA"), the full name, dates of treatment and policy information pertaining to the Patient
    is being withheld.  This information will be disclosed to defendants upon their request.

                                    - 1 -
                                  Complaint

**PARTIES**

2.      HAMOC, is and at all relevant times was a limited liability company, organized and existing under the laws of the State of California.  HAMOC is and at all relevant times was in good standing under the laws of the State of California.

3.      DEFENDANT is and was licensed to do business in and is and was doing business in the State of California, as insurers.   HAMOC is informed and believes that DEFENDANT is licensed by the Department of Managed Health Care and/or the Department of Insurance to transact the business of insurance in the State of California.  DEFENDANT is, in fact, transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4.      The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to HAMOC, who therefore sues said defendants by such fictitious names.  HAMOC is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to HAMOC.  HAMOC will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

5.      At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent.  At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patient.

**GENERAL FACTS**

- 2 -

6.      All of the claims asserted in this complaint are based upon the individual and proper rights of HAMOC in its own individual capacity and are not derivative of the contractual or other rights of the Medical Provider's Patient.  All of the claims asserted in this complaint arise out of the Medical Provider's interactions with DEFENDANT and DOES 1 through 10, inclusive and are derived from the representations and warranties made during those conversations amongst those parties. HAMOC does not in any way, seek to enforce the contractual rights of the Medical Provider's Patient, through the Patient's insurance contract, policies, certificates of coverage or other written insurance agreements.

7.      This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to HAMOC for use of facilities at which surgical care, treatment and procedures were provided to Patient, who were insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

8.      HAMOC is and was informed based on DEFENDANT's oral and other representations that the Patient were insureds of DEFENDANT either as subscribers to coverage or dependents of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them.  HAMOC is and was informed that the Patient entered into a valid insurance agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures and surgeries at medical facilities like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

9.      HAMOC is and was informed that DEFENDANT and DOES 1 through 10, inclusive, and each of them, received and continue to receive, valuable premium payments from the Patient and/or other consideration from the Patient under the subject policies applicable to the Patient.

Complaint

10.     Medical Provider and the doctors who performed surgeries or procedures upon the Patient were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other such standing, written contracts with DEFENDANT setting their rates of pay for services rendered, prior to the date that the surgeries or procedures were performed upon the Patient.

11.     It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

12.     Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

13.     Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan, but, rather, the health plan discourages its members and subscribers from obtaining their care from the non-contracted or non-participating providers.

14.     The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

15.     The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers including DEFENDANT's contracted rates for in-network providers have been so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts.  As a result, a growing number of medical providers have become non-contracted or out of network providers.

- 4 -

Complaint

16.     Since no other relationship exists between out of network providers and payors/insurers, to properly determine whether or not to provide medical services to a patient, the common practice of out of network medical providers is to obtain a separate oral promise and assurance of payment from the payor or its administrator/agent. In the instance where the terms of payment are unsatisfactory a medical provider will make other arrangements with the patient or tell the patient if they cannot follow through on the other arrangements to seek services somewhere else.

17.     Payors and insurers want their patients to be seen and so they commonly promise to pay a percentage of the market rate for the procedure, also described as, an average payment for this procedure or use of facility performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary ("UCR") and allowed, all to mean an average payment for this procedure or use of facility performed or provided by similarly situated medical providers within similarly situated areas or places of practice.

18.     Medical Provider and its affiliated physicians have a reputation for providing high quality care.  Its charges for its facilities and services are on par with the average charges of other medical providers in the same general area for the same facilities and/or services.

## SPECIFIC FACTS

### PATIENT

19.     On December 10, 2015, Patient received a surgical procedure using Medical Provider's facilities.

20.     On December 3, 2015, so as to determine whether or not to provide facilities, Medical Provider's employee, Yuriko H., obtained promises and information from DEFENDANT's representative, to be assured that DEFENDANT would pay for the facilities to be provided to Patient and under what terms that payment would be made.

21.     Medical Provider was informed that Patient's deductible is and was $500.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $4,000.00 and that to date for that calendar year Patient had paid $447.00.

22.     Until Patient's MOOP was met, Medical Provider was informed that Medical Provider would be paid for medical services, at seventy-five (75) percent of the market rate or UCR rate. Once the MOOP was met payment would be made at 100% of the UCR rate.

23.     Medical Provider was informed that there was no max daily payment amount.

24.     All of the information obtained was documented by Medical Provider as part of Medical Provider's written, office policy and practice.

25.     At no time prior to the provision of services to Patient by Medical Provider, on December 3, 2015 or otherwise, was Medical Provider advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the market rate.

26.     DEFENDANT did not make reference to any other portion of Patient's plan that would put Medical Provider on notice of any reduction in the originally stated payment percentage.

27.     Medical Provider was never provided with a copy of Patient's plan by the DEFENDANT or Patient. As a result, Medical Provider could not even make itself aware of any reduction of the payment amount.

28.     Medical Provider relied and provided services solely based on DEFENDANT's statements. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide facilities for the performance of the procedure. Medical Provider took DEFENDANT at its word and provided the facility for the procedures based solely on that information.

29.     Following the procedure, Medical Provider submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter

- 6 -

1   whether large or small, all of Medical Provider's claims were submitted to DEFENDANT using

2   CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as

3   necessary. Medical Provider submitted to DEFENDANT any and all billing information and any

4   and all additional information requested by DEFENDANT.

5        30.   DEFENDANT mailed an explanation of benefits letter and payment of $5,359.12,

6   however the amount was far below the billed amount of $177,273.00.

7        31.   Following DEFENDANT's incredibly low payment, Medical Provider sent

8   DEFENDANT a letter on January 8, 2016. The letter referenced the information provided by

9   Defendant along with data displaying the amount that should have been paid, in the hopes that

10  DEFENDANT would remit the proper payment to Medical Provider.

11       32.   DEFENDANT's agent Aetna responded on February 11, 2016 that no further

12  payment would be made.

13       33.   As of and until the date of the filing of this complaint, HAMOC, Medical Provider

14  and DEFENDANT have not indicated that the underpayment would be construed as a breach of

15  the promises and agreements made on December 3, 2015.

16       34.   Medical Provider was and now HAMOC is entitled to a full payment from

17  DEFENDANT according to the terms offered by DEFENDANT on December 3, 2015 and agreed

18  to by Medical Provider.

19                      **FIRST CAUSE OF ACTION:**

20                      **FOR QUANTUM MERUIT**

21       35.   HAMOC incorporates all allegations set forth in the above paragraphs as though

22  fully set forth herein.

23       36.   Medical Provider provided facilities for medical services, surgeries, procedures

24  and other medical care and treatment to Patient, who are and were insured by DEFENDANT, at

25  the request of DEFENDANT.

26       37.   Prior to the date that services were rendered, DEFENDANT requested the use of

27  Medical Provider's facility, offered prior authorization and pre-certification to Medical Provider

28  and otherwise promised, consented, pledged, agreed and committed to pay Medical Provider at a

- 7 -

1   rate of the average billed charges of similarly situated medical providers within similarly situated

2   areas or places of practice, also known as the UCR amount.

3         38.    Patient are and were satisfied with the facilities that were used to provide medical

4   services to the Patient. DEFENDANT requested and accepted the use of Medical Provider's

5   facilities to be used to provide services to the Patient.

6         39.    At the behest of DEFENDANT, Medical Provider provided facilities where

7   surgeries, procedures, medical treatments and other medical services were provided to the Patient,

8   thereby benefitting DEFENDANT and the Patient.  DEFENDANT has failed and refused to pay

9   Medical Provider the value for the facilities provided for Patient's use and for both

10   DEFENDANT and Patient's benefit.

11        40.    As an insurer, DEFENDANT relies on medical providers such as Medical

12   Provider to provide services to its policyholders, in this case the Patient.

13        41.    DEFENDANT is in the business of providing health benefits. Without the services

14   of health care providers such as Medical Provider, DEFENDANT's business would be missing

15   the integral part of its service to policyholders.

16        42.    Over the last five years more and more medical providers are choosing to no

17   longer accept insurance at all. DEFENDANT is benefitted by Medical Provider's willingness to

18   accept DEFENDANT's insurance, which assures that DEFENDANT's policyholders will have a

19   place to obtain healthcare.

20        43.    DEFENDANT is further benefitted by the good care provided by Medical Provider

21   to the Patient/policyholder, as that reflects back on DEFENDANT.

22        44.    DEFENDANT also receives valuable premium payments from Patient and patients

23   with the understanding that DEFENDANT will be covering a reasonable portion of his/her care,

24   should care be necessary.

25        45.    The quantum meruit amount owed by DEFENDANT to HAMOC is determined

26   according to the market rate of similarly situated medical providers.

27        46.    Based upon DEFENDANT's request that Medical Provider provide a facility in

28   which the Patient could receive treatment, surgeries, procedures and medical services, and the

- 8 -

Complaint

1   fact that DEFENDANT was benefitted by the provision of such services by Medical Provider, an

2   obligation on the part of DEFENDANT to make restitution to Medical Provider arose.

3       47.    DEFENDANT has refused to pay, and continues to refuse to pay Medical Provider

4   for the whole of the sums originally owed to Medical Provider for the facility in which the Patient

5   received treatment, surgeries, procedures and medical services. Accordingly, there is now due and

6   owing, to HAMOC an unpaid sum, plus statutory interest thereon.

7   **SECOND CAUSE OF ACTION:**

8   **FOR BREACH OF ORAL CONTRACT**

9       48.    HAMOC incorporates by reference all previous paragraphs alleged in this

10  complaint as though fully set forth herein.

11      49.    At all relevant times, an oral agreement and contract was in full force and effect

12  between Medical Provider and DEFENDANT and DOES 1 through 10, inclusive, and each of

13  them, whereby DEFENDANT and DOES 1 through 10, inclusive warranted, guaranteed,

14  promised, pledged and agreed to pay, and indemnify Medical Provider, for all services rendered

15  to Patient at the rate of UCR also known as the average billed charges of similarly situated

16  medical providers within similarly situated areas or places of practice. In reliance upon such

17  agreement and contract, Medical Provider accepted Patient for treatment and provided facilities to

18  initiate, administer and render surgeries and other medical services upon Patient, at great cost to

19  itself.

20      50.    Pursuant to the terms of the oral agreement, DEFENDANT and DOES 1 through

21  10, inclusive, and each of them, agreed to pay their portion of the full cost of the facilities at a rate

22  of average billed charges of similar medical providers within similarly situated areas or places of

23  practice, here referred to as the UCR amount.

24      51.    Medical Provider has performed and satisfied all obligations and conditions

25  precedent required on its part to be performed pursuant to the oral agreement.  Specifically,

26  Medical Provider contacted DEFENDANT and/or their agents, and each of them, in order to

27  obtain certification and authorization, submitted claims, invoices for services and other

28  documentation to allow the adjustment and payment of claims by DEFENDANT and each of

- 9 -

Complaint

1   them, and rendered care and treatment to Patient, pursuant to the terms of the subject oral

2   agreements.  DEFENDANT, and each of them, did certify, authorize and request the provision

3   and rendition of medical services by Medical Provider to Patient and, by their representations,

4   urged Medical Provider to proceed with and continue the care and treatment of Patient.

5        52.     DEFENDANT have failed and refused to pay Medical Provider and now

6   HAMOC for the full agreed cost of the medical facilities which were provided to the Patient by

7   Medical Provider.  In denying payment for the full charges incurred by the Patient, defendants,

8   and each of them, have breached their obligations as set forth in the subject oral agreement.

9        53.     As an actual, legal and proximate result of the aforementioned conduct of

10  defendants, and each of them, HAMOC has suffered, and will continue to suffer in the future,

11  damages under the oral agreement, plus interest, and other economic and consequential damages,

12  for a total amount to be shown at the time of trial.

13  **THIRD CAUSE OF ACTION**

14  **FOR PROMISSORY ESTOPPEL**

15       54.     HAMOC incorporates by reference all previous paragraphs as though fully set

16  forth herein.

17       55.     DEFENDANT promised and asserted that the procedure to be performed and

18  which was performed for and on the Patient was covered, authorized, certified and would be paid

19  for at the rate of UCR also known as the average billed charges of similarly situated medical

20  providers within similarly situated areas or places of practice.

21       56.     Medical Provider only decided to provide services because they were assured that

22  Medicare was not part of the calculation of payment and that Medical Provider would be paid at

23  the UCR rate.

24       57.     After assuring and promising Medical Provider that payment would be at the UCR

25  rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to

26  provide the facility for the performance of the procedure on the Patient expecting that payment

27  would be made at that rate.

28

Complaint

58.     As a direct and proximate result of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR or market rate.

59.     The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing the facilities to Patient. As a further direct, legal and proximate result of Medical Provider's detrimental reliance on the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said facility for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the facility to which HAMOC is now entitled.

60.     In light of the material representations and misrepresentations of DEFENDANT made to Medical Provider, and of Medical Provider's reliance on DEFENDANT's representations, and based upon Medical Provider's detrimental reliance thereon, DEFENDANT, and each of them, are estopped from denying payment and indemnification for Patient's treatments at the UCR rate and HAMOC is now entitled to the value enumerated by that calculation. An amount to be determined at the time of trial.

///
///
///
///
///
///
///
///
///
///
///
///

- 11 -

## PRAYER FOR RELIEF

**WHEREFORE,** HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC prays for judgment against defendants as follows:

    1.      For compensatory damages in an amount to be determined, plus statutory interest;

    2.      For restitution in an amount to be determined, plus statutory interest;

    3.      For a declaration that DEFENDANT are obligated to pay HAMOC all monies owed for services rendered to the Patient; and

    4.      For such other relief as the Court deems just and appropriate

Dated: December 26, 2017          LAW OFFICES OF JONATHAN A. STIEGLITZ

                                 By: _____
                                    JONATHAN A. STIEGLITZ
                                    Attorneys for:
                                    HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC

## DEMAND FOR JURY TRIAL

HAMOC, HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC hereby demands a jury trial as provided by law.

Dated: December 26, 2017          LAW OFFICES OF JONATHAN A. STIEGLITZ

                                 By: _____
                                    JONATHAN A. STIEGLITZ
                                    Attorneys for:
                                    HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC

- 12 -

Complaint

# EXHIBIT B

# CORPORATE CREATIONS®
Registered Agent • Director • Incorporation

**Corporate Creations Network Inc.**
11380 Prosperity Farms Road #221E, Palm Beach Gardens, FL  33410

January 4, 2018

Consumers Union of United States, Inc.
Sher'ri  Bell
Consumer Reports, Inc.
101 Truman Avenue
YONKERS  NY  10703

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

Note:  Any questions regarding the substance of the matter described below, including the status or to whom or where to respond, should be directed to the person set forth in line 12 below or to the court or government agency where the matter is being heard.

**Item: 2018-1**

| | | |
|---|---|---|
| 1. | **Client Entity:** | Consumers Union of United States, Inc. |
| 2. | **Title of Action:** | Healthcare Ally Management of California, LLC vs. Consumer Reports, Inc., et al. [Consumer Reports, Inc.] |
| 3. | **Document(s) Served:** | Summons<br>Complaint<br>Civil Case Cover Sheet<br>Notice of Case Assignment to Individual Calendar Court |
| 4. | **Court/Agency:** | Los Angeles County Superior Court |
| 5. | **State Served:** | California |
| 6. | **Case Number:** | SC128605 |
| 7. | **Case Type:** | Quantum Meruit/Breach of Oral Contract |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Wednesday 1/3/2018 |
| 10. | **Date to Client:** | Thursday  1/04/2018 |
| 11. | **# Days When Answer Due:** 30<br>**Answer Due Date:** 2/2/2018 | **CAUTION:** Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of service in their records matches the Date Received. |
| 12. | **SOP Sender:**<br>(Name, Address and Phone Number) | Jonathan A. Stieglitz, Esq.<br>Los Angeles, CA<br>(323) 979-2063 |
| 13. | **Shipped to Client By:** | Regular Mail and Email with PDF Link |
| 14. | **Tracking Number:** | Not Applicable |
| 15. | **Handled By:** | 051 |
| 16. | **Notes:** | None |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.