JONATHAN A. STIEGLITZ
(SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Telephone:  (323) 979-2063
Facsimile:    (323) 488-6748

Attorney for Plaintiff
Healthcare Ally Management
of California, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Healthcare Ally Management of California, LLC<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY and DOES 1-10, Inclusive<br><br>Defendant. | Case No.: 2:18-cv-00876 MWF (AGR)<br><br>**First Amended Complaint For:**<br><br>1.   BREACH OF ORAL CONTRACT; and<br>2.   PROMISSORY ESTOPPEL<br><br>**(Jury Trial Requested)** |

Plaintiff HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA, LLC (hereinafter referred to as "HAMOC") respectfully complains and alleges:

## STANDING

1.      On June 17, 2015, La Peer Surgery Center (hereinafter referred to as the "Medical Provider") entered into an agreement with HAMOC. The agreement provided that Medical Provider could assign any past, present or future unpaid or underpaid bills to HAMOC by sending HAMOC a copy of the unpaid or underpaid bill. The agreement also provided that once an underpaid or unpaid bill was assigned to HAMOC, HAMOC had the right to take any legal action necessary including the filing of a lawsuit to attempt to recover an unpaid or underpaid bill. On July 3, 2017, Medical Provider assigned Patient's[1] underpaid/unpaid bill including the right to file a lawsuit to HAMOC by sending via email a copy Patient's underpaid/unpaid bill to HAMOC. Patient is a member and enrollee of AETNA LIFE INSURANCE COMPANY (hereinafter referred to as "DEFENDANT").

## PARTIES

2.      Plaintiff, HAMOC, is and at all relevant times was a limited liability company, organized and existing under the laws of the State of California. HAMOC is and at all relevant times was in good standing under the laws of the State of California.

3.      DEFENDANT is and was licensed to do business in and is and was doing business in the State of California, as insurers.   PLAINTIFF is informed and believes that DEFENDANT is licensed by the Department of Managed Health Care

---

[1] For privacy reasons and in order to comply with Health Insurance Portability and Accountability Act ("HIPAA"), the full name, dates of treatment and policy information pertaining to the Patient is being withheld.  This information will be disclosed to defendants upon their request.

and/or the Department of Insurance to transact the business of insurance in the State of California. DEFENDANT is, in fact, transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

5. At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and its Patients.

## GENERAL FACTS

6. All of the claims asserted in this complaint are based upon the individual and proper rights of Medical Provider in its own individual capacity and are not derivative of the contractual or other rights of the Medical Provider's Patients.

7.     This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10, inclusive, of amounts due and owing now to HAMOC for use of facilities at which surgical care, treatment and procedures were provided to Patient, who were insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive.

8.     HAMOC is and was informed based on DEFENDANT's oral and other representations that the Patient were insureds of DEFENDANT either as subscribers to coverage or dependents of a subscriber to coverage under a policy or certificate of insurance issued and underwritten by DEFENDANT and or its agents. HAMOC is and was informed that the Patient entered into a valid insurance agreement with DEFENDANT and or its agents for the specific purpose of ensuring that the Patient would have access to medically necessary treatments, care, procedures and surgeries at medical facilities like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses incurred by the Patient.

9.     HAMOC is and was informed that DEFENDANT and or its agents received and continue to receive, valuable premium payments from the Patient and/or other consideration from the Patient under the subject policies applicable to the Patient.

10.    Medical Provider and the doctors who performed surgeries or procedures upon the Patient were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other such standing, written contracts with DEFENDANT setting their rates of pay for services rendered, prior to the date that the surgeries or procedures were performed upon the Patient.

11.    It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as

- 4 -
COMPLAINT

DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

12.   Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

13.   Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan, but, rather, the health plan discourages its members and subscribers from obtaining their care from the non-contracted or non-participating providers.

14.   The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

15.   The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers including DEFENDANT and or its agent's contracted rates for in-network providers have been so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts.  As a result, a growing number of medical providers have become non-contracted or out of network providers.

16.   Since no other relationship exists between out of network providers and payors/insurers, to properly determine whether or not to provide medical services to a patient, the common practice of out of network medical providers is to

obtain a separate oral promise and assurance of payment from the payor or its administrator/agent. In the instance where the terms of payment are unsatisfactory a medical provider will make other arrangements with the patient or tell the patient if they cannot follow through on the other arrangements to seek services somewhere else.

17.    Payors and insurers want their patients to be seen and so they commonly promise to pay a percentage of the market rate for the procedure, also described as, an average payment for this procedure or use of facility performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary ("UCR") and allowed.

18.    UCR is a well-known term of art in the health care industry for payment of medical claims. The Federal Government provides the commonly utilized definition for UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[2]

19.    To give a specific dollar amount, DEFENDANT, its agents, and other payors of insurance commonly utilize a publicly available database of information called Fair Health to calculate in dollars and cents what would be considered UCR. "If a health care benefit plan requires payment using the term "reasonable and customary" or similar language mentioned above with respect to medical and surgical procedures performed and billed by health care professionals or health care professional group practices, then the affiliates of UnitedHealth Group most

---

[2] Healthcare.gov, UCR (Usual, Customary and Reasonable) (April 30, 2018), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ [defining UCR].

commonly refer to a schedule of charges created by FAIR Health, Inc. ("FAIR Health") to determine the amount of the payment."[3]

20.     Medical Provider and its affiliated physicians have a reputation for providing high quality care.  Its charges for its facilities and services are on par with the average charges of other medical providers in the same general area for the same facilities and/or services.

## SPECIFIC FACTS
## PATIENT JC

21.     On December 10, 2015, Patient received a surgical procedure using Medical Provider's facilities.

22.     On December 3, 2015, so as to determine whether or not to provide facilities, Medical Provider's employee, Yuriko H., spoke with DEFEDANT's representative, Carrie, to be assured that DEFENDANT would pay for the facilities to be provided to Patient and under what terms that payment would be made.

23.     Medical Provider was informed that Patient's deductible is and was $500.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $4,000.00 and that to date for that calendar year Patient had paid $447.00.

24.     Until Patient's MOOP was met, Medical Provider was informed that Medical Provider would be paid for medical services, at seventy-five (75) percent of the UCR rate. Once the MOOP was met payment would be made at 100% of the UCR rate.

25.     Medical Provider was informed that there was no max daily payment amount.

26.     All of the information obtained was documented by Medical Provider as part of Medical Provider's written, office policy and practice.

---

[3] United Healthcare, Information on Payment of Out-of-Network Benefits (March 6, 2018), *https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits.*

COMPLAINT

27.   At no time prior to the provision of services to Patient by Medical Provider, on December 3, 2015 or otherwise, was Medical Provider advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

28.   DEFENDANT did not make reference to any other portion of Patient's plan that would put Medical Provider on notice of any reduction in the originally stated payment percentage.

29.   Medical Provider was never provided with a copy of Patient's plan by the DEFENDANT or Patient. As a result, Medical Provider could not even make itself aware of any reduction of the payment amount.

30.   Medical Provider relied and provided services solely based on DEFENDANT's statements. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to provide facilities for the performance of the procedure. Medical Provider took DEFENDANT at its word and provided the facility for the procedures based solely on that information.

31.   Following the procedure, Medical Provider submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of Medical Provider's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. Medical Provider submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

32.   DEFENDANT mailed an explanation of benefits letter and payment of $5,359.12, however the amount was far below the billed amount of $177,273.00.

COMPLAINT

33.     Following DEFENDANT's incredibly low payment, Medical Provider sent DEFENDANT a letter on January 8, 2016. The letter referenced the information provided by Defendant along with data displaying the amount that should have been paid, in the hopes that DEFENDANT would remit the proper payment to Medical Provider.

34.     DEFENDANT responded on February 11, 2016 that no further payment would be made.

35.     As of and until the date of the filing of this complaint, HAMOC, Medical Provider and DEFENDANT have not indicated that the underpayment would be construed as a breach of the promises and agreements made on December 3, 2015.

36.     Medical Provider was and now HAMOC is entitled to a full payment from DEFENDANT according to the terms offered by DEFENDANT on December 3, 2015 and agreed to by Medical Provider.

## FIRST CAUSE OF ACTION:
## FOR BREACH OF ORAL CONTRACT

37.     HAMOC incorporates by reference all previous paragraphs alleged in this complaint as though fully set forth herein.

38.     At all relevant times, an oral agreement and contract was in full force and effect between Medical Provider and DEFENDANT and DOES 1 through 10, inclusive, and each of them, whereby DEFENDANT and DOES 1 through 10, inclusive warranted, guaranteed, promised, pledged and agreed to pay, and indemnify Medical Provider, for all services rendered to Patients at the rate of UCR.  In reliance upon such agreement and contract, Medical Provider accepted Patients for treatment and provided facilities to initiate, administer and render surgeries and other medical services upon Patients, at great cost to itself.

39.     Pursuant to the terms of the oral agreement, DEFENDANT and DOES 1 through 10, inclusive, and each of them, agreed to pay their portion of the full cost of the medical services at a rate of UCR.

40.     Medical Provider has performed and satisfied all obligations and conditions precedent required on its part to be performed pursuant to the oral agreement.  Specifically, Medical Provider contacted DEFENDANT and/or their agents, and each of them, in order to obtain certification and authorization, submitted claims, invoices for services and other documentation to allow the adjustment and payment of claims by DEFENDANT and each of them, and rendered care and treatment to Patients, pursuant to the terms of the subject oral agreement.  DEFENDANT, and each of them, did certify, authorize and request the provision and rendition of medical services by Medical Provider to Patients and, by their representations, urged Medical Provider to proceed with and continue the care and treatment of Patients.

41.     DEFENDANT has failed and refused to pay Medical Provider and now HAMOC for the agreed cost of the medical services which were provided to the Patients by Medical Provider.  In denying payment for the charges incurred by the Patients, defendants, and each of them, have breached their obligations as set forth in the subject oral agreement.

42.     As an actual, legal and proximate result of the aforementioned conduct of defendants, and each of them, HAMOC has suffered, and will continue to suffer in the future, damages under the oral agreement, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

## SECOND CAUSE OF ACTION
## FOR PROMISSORY ESTOPPEL

43.     HAMOC incorporates by reference all previous paragraphs as though fully set forth herein.

COMPLAINT

44.     DEFENDANT promised and asserted that the procedures to be performed and which were performed for and on the Patients were covered, authorized, certified and would be paid for at the rate of UCR.

45.     Medical Provider only decided to provide services because they were assured that payment would be made at the UCR rate.

46.     After assuring and promising Medical Provider that payment would be at the UCR rate, DEFENDANT should have reasonably expected that Medical Provider would then go on to provide medical services expecting that payment would be made at that rate.

47.     Medical Provider did rely on the statements, assertions and promises of DEFENDANT and provided the medical services to the Patients.

48.     As a direct and proximate result of DEFENDANT's misrepresentations, Medical Provider has been damaged in an amount equal to the amount of money Medical Provider should have received had DEFENDANT paid the cost of the procedures at the UCR rate.

49.     The detriment suffered by Medical Provider is the amount required to make Medical Provider whole, for the time, cost and money expended in providing medical services to Patients.  As a further direct, legal and proximate result of Medical Provider's detrimental reliance on the oral agreement and the misrepresentations of defendants, and each of them, Medical Provider has been damaged due to the loss of monies expended in providing said medical services for which it was significantly underpaid and has suffered damages in the loss of use of the proceeds and income to be derived from the medical services to which HAMOC is now entitled.

50.     In light of the material representations and misrepresentations of DEFENDANT made to Medical Provider, and of Medical Provider's reliance on the oral agreement, and oral representations made by DEFENDANT and each of them, and based upon Medical Provider's detrimental reliance thereon,

1  DEFENDANT, and each of them, are estopped from denying payment and

2  indemnification for Patient's treatment at the UCR rate and HAMOC is now

3  entitled to the value enumerated by that calculation. An amount to be determined at

4  the time of trial.

5  / / /

6  / / /

7  / / /

8  / / /

9  / / /

10 / / /

11 / / /

12 / / /

13 / / /

14 / / /

15 / / /

16 / / /

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26

27  **PRAYER FOR RELIEF**

28

1  **WHEREFORE,** HEALTHCARE ALLY MANAGEMENT OF

2  CALIFORNIA, LLC prays for judgment against defendants as follows:

3      1.      For compensatory damages in an amount to be determined, plus

4  statutory interest;

5      2.      For restitution in an amount to be determined, plus statutory interest;

6      3.      For a declaration that DEFENDANT are obligated to pay HAMOC all

7  monies owed for services rendered to the Patient; and

8      4.      For such other relief as the Court deems just and appropriate

9  .

10  Dated: May 10, 2018        LAW OFFICES OF JONATHAN A. STIEGLITZ

11

12                                By: /S/Jonathan Stieglitz
                                      JONATHAN A. STIEGLITZ

13                                    Attorneys for:
                                      HEALTHCARE ALLY

14                                    MANAGEMENT OF CALIFORNIA,

15                                    LLC

16

17                      **DEMAND FOR JURY TRIAL**

18      HAMOC, HEALTHCARE ALLY MANAGEMENT OF CALIFORNIA,

19  LLC hereby demands a jury trial as provided by law.

20

21  Dated: May 10, 2018        LAW OFFICES OF JONATHAN A. STIEGLITZ

22

23                                By: /S/Jonathan Stieglitz
                                      JONATHAN A. STIEGLITZ

24                                    Attorneys for:
                                      HEALTHCARE ALLY

25                                    MANAGEMENT OF CALIFORNIA,
                                      LLC

26

27

28

COMPLAINT